IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-371-FL

| | |
|---|---|
| GUSTAVO ROMANELLO and ACELA ROMANELLO, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>BANK UNITED, INC.; TRUSTEE SERVICES OF CAROLINA, LLC; BROCK & SCOTT, PLLC; and ASHLEY H. CAMPBELL, )<br>)<br>Defendants. ) | ORDER |

This matter comes before the court on motions to dismiss plaintiffs' second amended complaint ("SAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Brock & Scott, PLLC ("B&S"), and Trustee Services of Carolina, LLC ("TSC") (DE 62); by defendants Ragsdale Liggett, PLLC ("Ragsdale"), and Ashley H. Campbell ("Campbell") (DE 68); and by defendant BankUnited, Inc. ("BUI") (DE 65). Also before the court is plaintiffs' motion for leave to file a third amended complaint (DE 78). Issues raised are ripe for decision. For reasons set forth more particularly below, the court GRANTS defendants' motions to dismiss and DENIES plaintiffs' motion to amend.

**STATEMENT OF THE CASE**

On June 20, 2012, plaintiffs Gustavo and Acela Romanello, acting *pro se*, filed complaint in this court against defendant BUI, alleged to be a banking corporation headquartered in Florida, defendant TSC, alleged to be a Delaware corporation, defendant B&S, also alleged to be a Delaware

corporation, defendant Ragsdale, alleged to be a North Carolina corporation, and defendant Campbell, alleged to be a partner at Ragsdale. Plaintiffs assert that each defendant committed various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; that each defendant committed violations of the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50 et seq.; and that defendants BUI and TSC violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") N.C. Gen. Stat. § 75-1.1 et seq. On July 31, 2012, plaintiffs filed an amended complaint, asserting the same claims.

Defendants B&S and TSC filed a motion to dismiss all claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 18). Shortly thereafter defendants Ragsdale and Campbell also filed a motion to dismiss all claims against them pursuant to Rule 12(b)(6), as did defendant BUI (DE 26, 30).[1]

Plaintiffs filed a motion to amend their complaint, and later filed their proposed SAC which included new factual allegations and new claims against defendants. While plaintiffs continue to allege each defendant violated various provisions of the FDCPA, the specific provisions each defendant is asserted to have violated has changed. Plaintiffs further allege violation of the NCDCA against defendant TSC and various violations thereof against defendant BUI. Plaintiffs also assert defendants TSC and BUI violated the UDTPA. Finally, plaintiffs allege that defendant BUI has committed violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605(c)(2)(b) and (e).

By order entered June 19, 2013, the court granted plaintiffs' motion to amend, and denied without prejudice defendants' motions to dismiss. In that order the court also directed the parties

---

[1] Defendants B&S and TSC, as well as defendants Ragsdale and Campbell, filed motions to stay pending ruling on defendants' motions to dismiss. The motions to stay were granted by order entered October 24, 2012.

2

to file proposed deadlines for filing any additional motions to dismiss directed towards plaintiffs' SAC. Defendants requested that they be allowed until August 9, 2013, to file additional motions to dismiss. Plaintiffs did not respond to the court's order, and the court adopted defendants' proposed deadline.

On August 8, 2013, defendants B&S and TSC filed a motion to dismiss plaintiffs' SAC pursuant to Rule 12(b)(6) (DE 62). Defendant BUI made a motion to dismiss pursuant to Rule 12(b)(6) the next day (DE 65) as did defendants Ragsdale and Campbell (DE 68). Plaintiffs then filed another motion to amend, requesting leave to file a third amended complaint (DE 78). Defendants BUI, B&S, and TSC filed responses in opposition to this motion (DE 83, 84).

## STATEMENT OF FACTS

As is appropriate on a motion to dismiss pursuant to Rule 12(b)(6), the court accepts plaintiffs' well-pleaded allegations as true except where the same are contradicted by matters properly subject to judicial notice or by exhibit. Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). The court may properly take judicial notice of all matters of public record. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). The court may also consider documents attached to motions to dismiss as long as they are "integral to the complaint and authentic." Id. Accordingly, the facts as alleged by plaintiffs in their SAC – as augmented by facts in their amended complaint – or demonstrated by exhibit or other matters of which the court may take judicial notice, are as follows:

In or about July 2005, plaintiffs signed a Promissory Note and Deed of Trust with BankUnited, FSB (not a party). SAC ¶ 13. This note was secured by property at 5445 Thunderidge Drive in Raleigh, North Carolina ("the property"), of which plaintiffs were residents and owners.

3

Am. Compl. ¶¶ 1, 12. BankUnited, FSB subsequently went into receivership with the FDIC. Id. at ¶ 17. BankUnited was created on May 21, 2009, and acquired the banking operations of BankUnited, FSB. See Def. BUI's Mot. to Dismiss SAC, Ex. 1, FDIC Website Printouts, 8. On May 21, 2009, the FDIC sold to BankUnited certain assets, including, without limitation, "all of the loan documents . . . underlying and/or related to . . . **GUSTAVO ROMANELLO and ACELA ROMANELLO** . . ." as well as the "rights, claims and interests underlying and arising from the [l]oan [d]ocuments." SAC, Ex. K 1-2. According to the FDIC's official website, defendant BUI is a separate entity from BankUnited – now named BankUnited, National Association.[2] See FDIC Website Printouts, 3. Defendant BUI is the holding company for BankUnited, and not itself a banking institution.[3] See id. at 2.

Plaintiffs filed for bankruptcy in May 2009. Am. Compl. ¶ 13. In the last week of September 2010, plaintiffs received a letter from the collection department of BankUnited demanding payments due and threatening acceleration, foreclosure, attorney's fees, court costs, and penalty charges. SAC ¶¶ 14-16, Ex. A. The letter did not state it was an attempt to collect a debt or that plaintiffs had thirty (30) days to dispute the debt. Id. On December 22, 2010, plaintiffs received a default letter from BankUnited, this time stating it was an attempt to collect a debt, but not informing that plaintiffs had thirty (30) days to dispute the debt. Id. at ¶ 17, Ex. B.

On February 7, 2011, plaintiffs received a letter from defendant TSC in care of defendant B&S telling plaintiffs that it was an attempt to collect a debt, that plaintiffs owed $170,892.36, and

---

[2] Where during the relevant events in this case, BankUnited, National Association was named simply BankUnited, the court will hereinafter refer to the same as "BankUnited."

[3] Throughout their SAC plaintiffs alleges that defendant BUI – referred to in the SAC as "BANKUNITED" – undertook various actions. The documents attached to plaintiffs' complaint reflect that these actions were done by BankUnited rather than by defendant BUI. Accordingly, this court's statement of facts reflects the same.

4

that plaintiffs had thirty (30) days to dispute the debt. Id. at ¶¶ 19, 20, Ex. C. In the last week of February, plaintiffs sent a written notice of dispute to BankUnited and to defendants B&S and TSC in which they asked numerous specific questions regarding the status of their loan. Id. at ¶ 21, Ex. D. BankUnited responded with verification asserting that the current holder of the Note was BankUnited and that there were no errors in the servicing of plaintiffs' loan that would warrant correction. Id. at ¶ 23, Ex. E. BankUnited included in their response a copy of the account activity since the inception of the loan. Id.

Plaintiffs hired an auditor to do a forensic analysis of the loan. Id. at ¶ 25. The audit stated that plaintiffs were being required to pay Ten Thousand Four Hundred Ninety-Four Dollars and 84/100 ($10,494.84) less under the terms of the Note than the estimated total cost of the loan that plaintiffs received after they applied for the loan. Id. at ¶ 25, Ex. H.

During the months of May 2011 through August 2011, BankUnited and defendants TSC, and B&S pursued foreclosure proceedings against plaintiffs in Wake County Superior Court. Id. at ¶ 26.
On August 29, 2011, BankUnited and defendants B&S, TSC, Ragsdale, and Campbell introduced into Wake County Superior Court, as evidence of BankUnited's ownership of the debt at issue, an Assignment of Note and Deed of Trust ("the assignment") from the FDIC to BankUnited. Id. at ¶ 29, Ex. K.. On September 7, 2011, the Wake County Superior Court, the Honorable Judge Robert Hobgood presiding, entered an order allowing foreclosure sale of the property. See Defs. Ragsdale and Campbell's Mem. Supp. Mot. to Dismiss SAC Ex. A, Order to Allow Foreclosure Sale. The court found that BankUnited was holder of the note sought to be foreclosed, and that said note evidences a valid debt owed by plaintiffs. Id. On September 29, 2011, defendant Campbell

5

delivered a letter to the court and copied the same to plaintiffs.  Id. at 30, Ex. J.  The letter included an enclosed proposed order allowing BankUnited to retrieve the assignment from the Court and file it with the Register of Deeds, and substitute a true and accurate copy of the assignment.  Id.

**COURT'S DISCUSSION**

A.      Motions to Dismiss

     1.      Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated, "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim.  Twombly, 550 U.S. at 556.  Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'"  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255

(4th Cir. 2009) (citations omitted). And as noted above, the court does not accept as true well-pleaded allegations which are contradicted by exhibits properly before the court on motion to dismiss or matters of which the court may properly take judicial notice. See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . the exhibit prevails.").

   2.   Defendant BUI

Defendant BUI moves for dismissal arguing that it is not the proper party to be sued. As discussed above, defendant BUI is the holding company for BankUnited. Furthermore, in an order dated September 7, 2011, Judge Robert Hobgood of the Wake County Civil Superior Court found that BankUnited, not defendant BUI, was the holder of the promissory note. See Order to Allow Foreclosure Sale. The exhibits filed and matters of public record demonstrate that the plaintiffs have named the wrong corporate entity in this suit. See, e.g., SAC Exs. A (a letter from BankUnited to plaintiffs); B (same); E (same); K (assignment of plaintiffs' loan documents and all rights arising thereunder from FDIC to BankUnited); Order to Allow Foreclosure Sale (finding that BankUnited is the holder of the note). Accordingly, the court grants defendant BUI's motion to dismiss.

   3.   Defendants Ragsdale and Campbell

Plaintiffs assert that defendants Ragsdale and Campbell violated various provisions of the FDCPA; specifically 15 U.S.C. §§ 1692e(11), 1692f, and 1692g(b). To state a claim under the FDCPA, plaintiffs must sufficiently allege that "(1) [they were] the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) [defendants Ragsdale and Campbell are] debt collector[s] as defined by the FDCPA, and (3) [defendants Ragsdale and Campbell] engaged

7

in an act or omission prohibited by the FDCPA." Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

Assuming, without deciding, that defendants Ragsdale and Campbell are debt collectors under the FDCPA who tried to collect a consumer debt from plaintiffs, the court nonetheless finds that plaintiffs' SAC fails to state a valid claim against these defendants where none of the acts complained of violate the FDCPA.[4] Pursuant to 15 U.S.C. § 1692e(11), a debt collector's failure to disclose in its initial communication that the debt collector is attempting to collect a debt is a violation of the FDCPA. Although plaintiffs allege that defendants Ragsdale and Campbell "failed to warn Plaintiffs with the disclosure 'This is an attempt to collect a debt...'" in their initial communication," SAC ¶ 38, the only "communication" plaintiffs allege receiving from defendants Ragsdale and Campbell was a letter with a proposed order enclosed that these defendants sent to Judge Hobgood on which plaintiffs were copied. This was not a communication to plaintiffs for the collection of a debt. Moreover, section 1692e(11) specifically provides that "this paragraph shall not apply to a formal pleading made in connection with a legal action." Accordingly, plaintiffs fail to state a valid claim against defendants Ragsdale and Campbell under section 1692e(11).

Plaintiffs also assert that defendants Ragsdale and Campbell violated 15 U.S.C. § 1692g(b). Within five days after initially contacting a consumer regarding collection of a debt, a debt collector must send the consumer a notice informing that if the consumer disputes the debt in writing within thirty (30) days of the notice that the debtor will obtain verification of the debt and mail it to the consumer. 15 U.S.C. § 1692g(a). Furthermore,

---

[4] Defendants Ragsdale and Campbell contend they are not debt collectors and did not attempt to collect a consumer debt from plaintiffs. The court need not reach these arguments.

8

> [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector.

Id. "[T]he Act does not define the term 'verification' nor explain what constitutes sufficient verification." Johnson, 867 F. Supp. 2d at 782-3. However, the Fourth Circuit instructs that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999).

Plaintiffs contend that defendants Ragsdale and Campbell violated section 1692g(b) between May and August of 2011 by "getting Court approval to foreclose on the property" thereby "fail[ing] to cease collection efforts while the debt was disputed." SAC ¶¶ 26, 34. Plaintiffs attached the letter sent to BankUnited and defendant TSC as Exhibit D to their SAC. The letter is dated February 25, 2011. Id. at ¶ 21, Ex. D 1. Plaintiffs also attach BankUnited's April 26, 2011, response to their notice of dispute, confirming that "[t]here have been no errors with the servicing of your loan" and enclosing account activity history to allow plaintiffs to independently verify this. Id. at ¶ 23, Ex. E.

This verification served as written confirmation that the amount demanded is what the creditor was claiming to be owed. Chaundry, 174 F.3d at 406. Thus, the alleged collection activity occurring between May and August of 2011 took place after the April 26, 2011, verification was provided. Plaintiffs allege no specific collection activity occurring between February 25, 2011, and April 26, 2011. Therefore plaintiffs fail to state a valid claim against defendants Ragsdale and Campbell under 15 U.S.C. § 1692g(b).

9

Finally, plaintiffs contend defendants Ragsdale and Campbell violated 15 U.S.C. § 1692f, which prohibits using "unfair or unconscionable means to collect or attempt to collect any debt," by introducing an assignment of note and deed of trust in state court foreclosure proceedings. The assignment, which is attached as Exhibit K to plaintiffs' SAC, is dated August 22, 2011.

"Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it." Sartin v. Macik, 535 F.3d 284, 287 (4th Cir. 2008). "Res judicata, or claim preclusion, bars the relitigation of any claims that were or could have been raised in a prior proceeding between the same parties." Id.; see also Painter v. Wake Cnty. Bd. of Ed., 288 N.C. 165, 173, 217 S.E.2d 650, 655 (1975) (". . . Res adjudicata applies . . . to every point which properly belonged to the subject in litigation and which the parties, [e]xercising reasonable diligence, might have brought forward at the time and determined respecting it.").

In this case, plaintiffs' claim under § 1692f is based upon an allegation that the assignment introduced in the state court foreclosure proceeding was not effective and was introduced solely to create an appearance that BankUnited had the right to foreclose when it did not. However, the state superior court held that BankUnited was the holder of the note which was in default and evidenced a valid debt owed by plaintiffs to BankUnited. Thus plaintiff is trying to relitigate the matter, already finally adjudicated, of whether BankUnited was properly the holder of the note in default. Plaintiff is barred from doing so by the doctrine of *res judicata*. See Oketch v. JPMorgan Chase & Co., Inc., No. 3:12-CV-102, 2012 WL 2155049, at *4 (W.D.N.C. June 13, 2012) (holding that plaintiff's claims for breach of contract, for fraud, for breach of the covenant of good faith, and under the UDTPA were barred by *res judicata* where all such claims were dependent on a finding

10

that the foreclosure on plaintiff's property was wrongful).[5]

    4.    Defendants B&S and TSC

Plaintiffs allege that defendants B&S and TSC violated certain FDCPA provisions, namely, 15 U.S.C. §§ 1692g(b), 1692f, and 1692e(2). Plaintiffs also allege that defendant TSC violated the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-54(4), and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.

        a.    FDCPA

As noted above, one of the elements necessary to state a claim for an FDCPA violation is to sufficiently allege that defendants "engaged in an act or omission prohibited by the FDCPA." Johnson, 867 F. Supp. 2d at 776. This plaintiffs have failed to do. As with defendants Ragsdale and Campbell, plaintiffs allege that defendants B&S and TSC violated § 1692g(b) by failing to cease collection efforts after the debt was disputed. For the same reasons that plaintiffs failed to state a claim under § 1692g(b) against defendants Ragsdale and Campbell, they fail to state a § 1692g(b) claim against defendants B&S and TSC. The collection activity plaintiffs allege defendants B&S and TSC engaged in after plaintiffs sent their notice of dispute is also alleged to have occurred beginning in May 2011, after plaintiffs received verification in April from BankUnited. Thus,

---

[5] In addition to arguing that plaintiffs' claims are precluded by *res judicata*, defendants Ragsdale and Campbell also argue that this court does not have jurisdiction to consider plaintiffs' § 1692f claim under the Rooker-Feldman doctrine. While the court agrees that plaintiffs' claims are precluded by *res judicata*, the Rooker-Feldman doctrine does not apply here. That doctrine, the namesake of Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) stands for the proposition that no court other than the Supreme Court may entertain a proceeding to reverse or modify a state court judgment. The Supreme Court has made clear, however, that the Rooker-Feldman doctrine does not supplant preclusion doctrines and only applies when the loser in the state court proceedings is seeking redress for an injury caused by the state court decision itself. See Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Thus, after Exxon Mobile, the Fourth Circuit has held that Rooker-Feldman does not apply where a plaintiff's "claim of injury rests not on the state court judgment itself, but rather on the alleged violation" by the defendant. Here plaintiffs do not challenge the state court decision itself, but rather actions by defendants which plaintiffs contend violate the FDCPA; therefore, while preclusion principles apply, Rooker-Feldman does not. Thus, although the court concludes plaintiffs claims are barred by *res judicata*, it has subject matter jurisdiction to reach this conclusion.

11

plaintiffs fail to state a claim for a violation of § 1692g(b). See Chaundry, 174 F.3d at 406.

Plaintiffs' claim against defendants B&S and TSC under § 1692f is also the same as their § 1692f claim against defendants Ragsdale and Campbell: they assert that defendants B&S and TSC produced an ineffective assignment at foreclosure proceedings. SAC ¶¶ 29, 36. Thus, this claim against defendants B&S and TSC fails for the same reason as it did against defendants Ragsdale and Campbell. The Wake County Superior Court found that BankUnited was the holder of the note which was in default and evidenced a valid debt owed by plaintiffs to BankUnited. Where the validity of the assignment is thus established, plaintiffs are barred from relitigating this matter. See Sartin, 535 F.3d at 287.[6]

Finally, plaintiffs assert that defendants B&S and TSC violated § 1692e(2). This section prohibits "[t]he false representation of-- (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." Id. Plaintiffs allege that defendants B&S and TSC violated this provision based upon BankUnited's response to their notice of dispute addressed to both BankUnited and defendant TSC. BankUnited responded stating that there were been no errors with the servicing of plaintiffs' loan warranting correction. See SAC Ex. E 1.

Plaintiffs contend that this statement violated § 1692e(2) on the basis of an audit plaintiffs had conducted on the loan purporting to show a Ten Thousand Four Hundred Ninety-Four Dollar and 84/100 ($10,494.84) difference between the amount of total payments owed under the loan as determined by the loan documents and the estimate of the same amount in disclosure statements

---

[6] Defendants B&S and TSC also argue that the court lacks subject matter jurisdiction to consider this claim under the Rooker-Feldman doctrine. For reasons discussed in footnote 5, *supra*, the Rooker-Feldman doctrine does not apply here.

made to plaintiffs.[7]  See SAC Ex. H.  Nowhere in the complaint, however, do plaintiffs allege any actions whatsoever by defendant B&S and TSC taken in response to their notice of dispute.  The response to this dispute discussed was a response sent by BankUnited.  Thus, plaintiffs fail to allege any factual matter upon which to base a cause of action against defendants B&S and TSC under § 1692e(2).

        b.      NCDCA

Plaintiffs also allege that defendant TSC violated N.C. Gen. Stat. § 75-54(4).  This statute proscribes debt collectors from attempting to collect a debt by "[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; falsely representing that the collector is in any way connected with any agency of the federal, State or local government; or falsely representing the creditor's rights or intentions."  Id.  Plaintiffs allege that defendant TSC "misrepresented the amount owed by Plaintiffs in the February 7 letter [from defendant TSC to plaintiffs], there's a $10,000 difference in the finance charge amount over the life of the loan."  SAC ¶ 42.  See SAC Ex. C. February 7, 2011, Letter, 1.

It appears that plaintiffs again refer to the forensic audit stating there is a Ten Thousand Four Hundred Ninety-Four Dollar and 84/100 ($10,494.84) difference in the disclosure statement and the amount actually owed under the Note.  Plaintiffs do not allege, however, that the amount defendant TSC stated was owed in the February 7, 2011, letter was based upon the disclosures instead of the

---

[7] Defendants B&S and TSC state that the difference is between the actual amount owed and the good faith estimate disclosure plaintiffs received pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.  The audit purports to be a "TILA Analysis," see Audit, suggesting the disclosures considered were those made pursuant to the Truth In Lending Act ("TILA"), 15 U.S.C. § 1641 et seq.  Both the RESPA good faith estimate and the TILA disclosures, however, are estimates made shortly after an applicant completes their loan application of what will be owed under the actual note.  Both are made without the involvement of a trustee and the trustee's attorneys.  Thus, it is not material, for the purposes of this motion, whether the Ten Thousand Four Hundred Ninety-Four Dollar and 84/100 ($10,494.84) difference is between the actual cost of the loan and the RESPA good faith estimate, or the actual cost of the loan and the TILA disclosures.

terms of the actual note. Indeed, plaintiffs plead no factual information sufficient to state a plausible claim for relief under N.C. Gen. Stat. § 75-54(4); accordingly, this claim must be dismissed. Iqbal, 556 U.S. at 678.

   c. UDTPA

Plaintiffs final allegation against defendant TSC is for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1. While the grounds for this complaint are not altogether clear, plaintiffs appear to assert that the conduct by defendant TSC alleged to have violated the FDCPA and NCDCA also violated the UDTPA. Under the UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Id. at § 75-1.1(a).

To establish a violation of the UDTPA, plaintiffs must establish "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Walker v. Fleetwood Homes of N. Carolina, Inc., 362 N.C. 63, 71-72, 653 S.E.2d 393, 399 (2007). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." Id. at 72 (quoting Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981)).

Here, none of the predicate acts alleged are unfair or deceptive. The court has already found that defendant TSC's alleged actions in proceeding with the state foreclosure action occurred after the required debt verification was sent to plaintiffs. The assignment plaintiffs allege defendant TSC introduced into state court foreclosure proceedings was conclusively found by the state court to be valid. Finally, plaintiffs allege no facts making plausible their claim that defendant TSC

14

misrepresented the amount or character of the debt. Accordingly, plaintiffs have not alleged facts making plausible their UDTPA claim against defendant TSC, and it must be dismissed. Iqbal, 556 U.S. at 678.

B.      Motion to Amend

After responding to defendants' motions to dismiss, on September 5, 2013, plaintiffs filed a motion requesting leave to file a third amended complaint ("TAC") together with a memorandum in support of their motion, and their proposed TAC. Defendant BUI, as well as defendants B&S and TSC, have filed responses in opposition to this motion to amend.

1.      Standard of Review

Once a responsive pleading is filed, a plaintiff may only amend his or her complaint with the court's leave or by defendant's written consent. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberal rule gives effect to the federal policy in favor of resolving cases on their merits, rather than disposing of them on technicalities. See Laber v. Harvey, 438 F.3d 404, 425 (4th Cir. 2006) (en banc). Leave to amend under Rule 15(a), should, however, be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Id. at 426-47. Amendment is futile if the proposed amended claim cannot withstand a motion to dismiss. See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

2.      Analysis

The newly pleaded facts in plaintiffs proposed TAC are as follows. Plaintiffs assert that after some difficulty, they began working on a loan modification with defendant BUI in January 2011. TAC ¶ 18. On February 12, 2011, they received the February 7, 2011, letter from defendant TSC,

15

in care of defendant B&S stating that plaintiffs owed a total of One Hundred Seventy Thousand Eight Hundred Ninety-Two Dollars and 36/100 ($170,892.36). Id. at ¶¶ 19-20, Ex. C. As noted earlier, this letter was the first which informed plaintiffs that under the FDCPA they could dispute the debt within thirty days of their receipt of the letter. On February 11, 2011, the day before they received this letter, defendants BUI, TSC, and B&S had already instituted foreclosure proceedings. Id. at ¶ 20. Ex. B, February 11, 2012, Court Receipt. Plaintiffs sent their letter disputing the debt, and the verification sent in response included the name and address of BankUnited.[8] SAC Ex. E, Debt Verification (DE 54-6). The verification did not include copies of the assignment or of an allonge also presented in the state court foreclosure proceedings. Id. Plaintiffs received a notice of foreclosure sale, dated August 24, 2012, from defendant TSC, care of defendant B&S. TAC ¶ 29. Ex. F. Plaintiffs also note that in addition to the assignment, defendants presented the allonge to Judge Hobgood in the state court foreclosure proceedings, over plaintiffs' objection. Finally, plaintiffs allege that they did not receive notice of the foreclosure sale, that defendant BUI bought their loan and sold it to Stanwich Trust/Carrington Mortgage, which is now attempting to collect on plaintiffs. Id. at ¶ 37.

With these additional facts in mind, the court turns to plaintiffs' claims against defendants in their proposed TAC. As an initial matter, plaintiffs still direct their claims against defendant BUI rather than BankUnited. As defendant BUI is the wrong party to be sued, plaintiffs' proposed amendment is futile as against defendant BUI.

Plaintiffs' proposed amendment is also futile against the other defendants in this case. With respect to their FDCPA claims, plaintiffs first allege that defendants B&S and TSC violated 15

---

[8] Plaintiffs note that there was no mention of BankUnited, N.A. As has already been demonstrated, at the time, BankUnited, N.A. was known simply as "BankUnited."

U.S.C. § 1692e(10) by initiating the foreclosure proceedings before plaintiffs received the February 7, 2011, letter from defendant TSC in care of defendant B&S which informed plaintiffs of their right to dispute the debt.[9] TAC ¶ 41. Assuming, without deciding, that this action of instituting proceedings violated section 1692e(10), this claim is barred by the statute of limitations. "An action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C.A. § 1692k(d). Here, the alleged violation occurred on February 11, 2011, but plaintiffs did not bring suit until June 20, 2012, over one year later.

Plaintiffs next reassert their claim that defendants violated 15 U.S.C. § 1692g(b) by failing to cease collection efforts while the debt was disputed. In their proposed TAC, like their SAC, plaintiffs allege no collection activity taking place between the time they disputed their debt, and the time they received verification of the debt. See id. ("[T]he debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt. . . and a copy of such verification . . . is mailed to the consumer by the debt collector.") Thus amendment is futile as to this claim also.

Plaintiffs then assert that defendants violated 15 U.S.C. 1692f by producing the Assignment of Note and Deed of Trust, as well as the allonge, during foreclosure proceedings. TAC ¶ 43. This claim is identical to the claim in plaintiffs' SAC, but for its mention of the allonge. The addition of the allonge to this claim makes no difference as the state court conclusively established that BankUnited was properly the holder of the note in default, and plaintiffs are barred by *res judicata* from religitating this matter. Similarly, plaintiffs claim that the introduction of the assignment and

---

[9] Plaintiffs also maintain this claim against defendant BUI. The court has already determined that defendant BUI is properly dismissed where plaintiffs have sued the wrong party, and that plaintiffs' proposed amended claims against defendant BUI are futile for the same reason. Accordingly, where a claim names defendant BUI along with another defendant, or other defendants, the court will only consider that claim as against the non-BUI defendant(s).

17

allonge violated 15 U.S.C. § 1692e(2) is also barred by *res judicata*.

Plaintiffs' final FDCPA allegation is that defendants Ragsdale and Campbell violated 15 U.S.C. § 1692e(11) by failing to warn "this is an attempt to collect a debt" in their communications. TAC ¶ 45. This claim is substantively identical to plaintiffs' claim in their SAC, and fails for the same reasons.

Plaintiffs again assert that defendant TSC violated the prohibition in N.C. Gen. Stat. 75-54(4) on falsely representing the character, extent, or amount of a debt or its status in any legal proceeding. TAC ¶ 47. In their proposed TAC, plaintiffs would allege that defendant TSC violated this provision through the allonge and assignment of note and deed of trust. As with their claim made pursuant to 15 U.S.C. § 1692f, this claim is barred by *res judicata*.

Finally, plaintiffs assert that defendant TSC violated the UDTPA on the basis of the allegations against it. Once again, plaintiffs base their UDTPA claim upon other claims, and those claims fail; accordingly, the UDTPA claim fails also, and plaintiffs' proposed amendment as to this claim is futile. Plaintiffs' assert their remaining claims against defendant BUI only, and these claims are therefore also futile. Thus, plaintiffs' motion to amend their complaint is denied.

## CONCLUSION

For the reasons given, the court GRANTS the motions to dismiss by defendant BUI (DE 65), by defendants B&S and TSC (DE 62), and by defendants Ragsdale and Campbell (DE 68). Plaintiffs' motion for leave to file a third amended complaint (DE 78) is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 12th day of December, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge